STATE of Missouri, Respondent,

v.

Bradley J. JENNINGS, Appellant.

No. SD 30198.

Missouri Court of Appeals,
Southern District,
Division Two.

Sept. 28, 2010.

Dee Wampler, Jason Coatney, Springfield, for Appellant.

Chris Koster, Atty. Gen., Terrence M. Messonnier, Asst. Atty. Gen., Jefferson City, for Respondent.

DANIEL E. SCOTT, Chief Judge.

A jury found that Bradley Jennings ("Defendant") murdered his wife. We reject his challenge to the sufficiency of the evidence, along with his claims of plain error, and affirm his convictions.[1]

**Facts and Background**

We summarize the evidence as we must view it, focusing only on evidence and inferences tending to show Defendant's guilt, and ignoring all that might suggest his innocence. *See, e.g., State v. Freeman,* 269 S.W.3d 422, 425 (Mo. banc 2008); *State v. Richardson,* 296 S.W.3d 21, 23 & n. 2 (Mo.App.2009).

Defendant and his wife, Lisa,[2] were married for nearly two decades, but the relationship in later years was not a happy one. Lisa talked with several persons about her marital problems and the possibility of dissolving the marriage. In the months leading up to her death, she indicated that she was ready to separate from Defendant, get her own apartment, and be happy.[3] She wanted Christmas 2006 to be a good one for their kids because she planned to leave Defendant after the holidays.

According to family tradition, Defendant, Lisa, their two minor children, and Lisa's adult daughter, Laci Deckard, had Christmas Eve dinner with Defendant's mother, then returned to the Jennings home. Sometime after 10 p.m., Ms. Deckard and the children went upstairs and fell asleep, Defendant went to bed, and Lisa stayed up to watch a movie. Everyone planned to celebrate Christmas with friends and family at the Jennings home the next day.

Sometime after 1 a.m., Ms. Deckard was awakened by Defendant and Lisa arguing. Lisa was crying and Defendant was suggesting that she was involved with another man. Ms. Deckard could not calm the situation and went home to avoid the argument. When she left, Lisa was in a bathroom off of the master bedroom, and Defendant was on the living room couch wearing his bathrobe and slippers.

Ms. Deckard got home and called back to see if things were all right. Her younger sister answered, hysterically screaming that their mother was dead. Defendant took the phone and Ms. Deckard asked him what he had done. He replied only that Ms. Deckard needed to return.

Deputy Kyle Heidler arrived at the Jennings home shortly after 2 a.m. Defendant and his two children were the only persons there.[4] Defendant was wearing a shirt, jeans, and shoes, and was drinking a beer. Ms. Deckard arrived and noticed Defendant's change of appearance.

Lisa's body was in the master bedroom closet. She was shot in the head; there was a lot of blood and exposed brain matter. Based on blood spatter and pooling patterns on the wall and floor, Lisa was shot while she was kneeling or sitting, then someone moved the body. Ballistics testing traced a nearby bullet to Defendant's revolver, which was under Lisa's leg.

Defendant claimed that, after arguing with Lisa, he went out to his shop to tinker around and have a beer. He came back,

---

1. He also was found guilty on a related charge of armed criminal action.

2. Because most witnesses described the victim by her first name, we also do so with no disrespect intended.

3. Witnesses testified to seeing Lisa with apartment lease papers, and to finding a lease application among her personal effects after her death. Defendant told officers investigating Lisa's death that their marriage had been problematic for years.

4. At one point that night, Deputy Heidler sought to ask the children a question. Defendant told the children not to talk to the deputy and to go back to their rooms.

**600**

stuffed some Christmas stockings, and went to check on Lisa. He entered the bedroom and saw her in the closet with a head wound. He moved her body, held her briefly, then called 911. He exchanged his robe and slippers for new clothes before anyone arrived, but said he "didn't really know why."

Dr. Keith Norton, a forensic pathologist, performed the autopsy. Lisa was killed by a contact gunshot from just above and behind her right ear. The muzzle was so near Lisa's head that gasses from the gun barrel ripped her scalp apart and left soot on her skull. Dr. Norton testified that such wounds result in "blowback"—body and blood particles that fly back through the air onto the gun and the hand holding it.

Daniel Nash, a Highway Patrol investigator trained in blood pattern analysis and crime scene reconstruction, reviewed the evidence and reconstructed the crime scene. Blood spatter blowback covered nearly four feet of the wall, yet only one blood droplet and no brain or skull matter was found on Lisa's right hand. Nash concluded that Lisa did not take her own life because her hand and arm, and the gun, did not exhibit the blood and tissue that should have been there had she pulled the trigger.

Blood stains on Defendant's robe matched Lisa's DNA profile. They were not transfer stains and did not result from the wearer holding Lisa's body. Tests also indicated the presence of microscopic "atomized" blood on the robe, consistent with blowback from a weapon fired from a distance of three feet or less. The blood stains on the robe were consistent with a shot fired from a height of 15–20 inches.[5]

## Point I

■ Defendant challenges the sufficiency of the evidence, essentially claiming the proof was insufficient to show this was a homicide, not a suicide.[6] Our standard of review is well-established:

Our review is limited to determining whether there was sufficient evidence from which a reasonable fact-finder could have found Defendant guilty beyond a reasonable doubt. We do not weigh evidence, determine witness credibility, or act as a "super juror" with veto power over the verdicts; but give great deference to the trier of fact. We accept as true the evidence and reasonable inferences favorable to the verdicts and disregard those that are unfavorable.

It matters not, in these regards, that the evidence was solely circumstantial. Circumstantial and direct evidence are afforded the same weight. So long as the evidence meets the minimal appellate standard for due process, we need not disturb the verdicts simply because they depended wholly upon circumstantial proof.

*State v. Capraro*, 291 S.W.3d 364, 366 (Mo.App.2009)(internal references and citations omitted). We will not weigh evidence anew since jurors might have believed all, some, or none of the testimony of any witness when considered with the facts, circumstances, and other testimony in the case. *Freeman*, 269 S.W.3d at 425.[7]

---

5. In a voluntary interview prior to his arrest, Defendant was confronted with this evidence and was asked if he had any explanation. He could not explain it; indicated that it "looks kind of bad, doesn't it"; then ended the interview and left.

6. Defendant's closing argument at trial was that Lisa killed herself.

7. This court found the evidence in *Freeman*, which was much weaker than in this case, insufficient to support a conviction. Our supreme court granted transfer and ruled otherwise. *See Freeman*, 269 S.W.3d at 424–26 & n. 4.

■ The record, as we must view it, supports the convictions. Both Dr. Norton and Nash testified that there should have been substantial blowback onto the gun and the shooter's arm and hand, but no skull or brain tissue and only one blood droplet was found on Lisa's hand. Lisa's blood on Defendant's robe was not a transfer stain and, thus, did not get there by Defendant holding her body. When Nash confronted Defendant with such evidence, prior to any arrest, Defendant agreed "that someone had to be wearing that robe, standing next to Lisa when she was shot."

There also was evidence from which the jury could infer that Lisa would not have taken her own life. A paramedic testified that in suicides by firearm, the gun usually is found in the hand or falls, but does not fall under the person. Witnesses testified that Lisa had a good job and was in a positive mood in the days leading up to Christmas, decorating her home and looking forward to sharing the holiday with family.

Further, the jury could have deemed Defendant's actions consistent with an inference of guilt. *See, e.g., State v. Still,* 216 S.W.3d 261, 267 (Mo.App.2007). First, Defendant admitted that he moved Lisa's body before he called 911. Considering the gun's location and clean appearance, the jury could have inferred that Defendant wiped the weapon and moved the body in order to conceal a crime. Second, Defendant cleaned up and changed clothes before anyone arrived, from which jurors could have deduced a concern about blood and tissue on his clothes and person after he shot Lisa. Third, during Nash's investigation, Defendant called Nash and said the matter had been "put to bed," and Nash should mind his own business and leave it alone. Likewise, Defendant told his children not to talk to Deputy Heidler on the night of the shooting. Reasonable jurors could have inferred Defendant's consciousness of guilt from such conduct.

Defendant's arguments from evidence favorable to him disregard our standard of review. Viewing the evidence and reasonable inferences favorably to the verdict, we cannot say that a reasonable jury had to acquit Defendant. "There are other potential inferences, but they are not so believable and inescapable as to convince us that they would give rise to a reasonable doubt in the mind of a reasonable juror." *State v. Grim,* 854 S.W.2d 403, 413 (Mo. banc 1993). Point I fails.

### Point II

Defendant seeks Rule 30.20 plain error review in Point II, claiming the trial court erred in admitting hearsay testimony about Lisa's divorce plans and whether Defendant ever struck her "even though defense counsel made no objection to it." Defendant asserts, without adequate Rule 84.04(i) transcript references, that the jury heard hearsay about Lisa's "alleged state of mind regarding the status of her marriage," and "several witnesses testified" that Lisa made statements "at various stages of her life regarding the status of her marriage." These complaints, as best we can tell, relate to a few statements during testimony by Lisa's friend, Linda Harrison, and Ms. Deckard.

■ Plain error review is discretionary and involves two steps. *State v. Garrison,* 276 S.W.3d 372, 374 (Mo.App.2009). First, we consider the facts and circumstances to facially determine if there was plain error—*i.e.,* "evident, obvious and clear" error. *Id.* Unless we identify plain error, we do not reach the second step of determining if manifest injustice or a miscarriage of justice resulted. *Id.*

■ Defendant does not get past step one. Hearsay admitted without objection

is not plain error. *See Masden v. State*, 62 S.W.3d 661, 670 n. 4 (Mo.App.2001); *State v. Brown*, 912 S.W.2d 643, 645 (Mo.App. 1995).[8]

■ Moreover, although Defendant claims the court should have interrupted the trial and stricken testimony to which no objection had been made, a trial judge "should act *sua sponte* in the trial of a case only in exceptional circumstances." *State v. Wright*, 216 S.W.3d 196, 199 (Mo.App. 2007).

> Missouri courts have been reluctant to criticize a trial court when it has declined to take action on its own motion on behalf of a party during the examination of a witness. Indeed, such invitations have been rejected in all but the most unusual circumstances. *See State v. Francis*, 60 S.W.3d 662, 671 (Mo.App. 2001). There is sound reasoning behind such hesitance to require a trial court to take *sua sponte* corrective action. In *State v. Drewel*, 835 S.W.2d 494 (Mo. App.1992), the Eastern District stated:
>
>> We do not expect trial judges to assist counsel in the trial of a lawsuit. Too often they are accused of trying "my law suit." They preside to judge a lawsuit. *Sua sponte* action should be exercised only in exceptional circumstances. In the case *sub judice* the judge was in a better position to evaluate the prejudicial effect of the proffered question and, although not objected to, determined that no harmful result occurred. Therefore, the trial court was correct in not offering a *sua sponte* declaration.
>
> *Id.* at 498. Uninvited interference by the trial judge in trial proceedings is generally discouraged, as it risks in-

jecting the judge into the role of a participant and invites trial error. *Cf. State v. Rhodes*, 988 S.W.2d 521, 526–27 (Mo. banc 1999) (discussing claim that trial court should have taken *sua sponte* action during closing argument). In certain circumstances, a trial judge's intervention in the proceedings may be unwelcome, as the failure to raise an objection may be a matter of trial strategy. *See State v. Francis*, 60 S.W.3d at 671.

*State v. Roper*, 136 S.W.3d 891, 902 (Mo.App.2004)(footnote omitted). Point II is denied.

### Point III

■ Defendant also claims the trial court plainly erred in admitting testimony by two officers that Defendant "assaulted or hit" Lisa. Because Defendant did not object at trial or raise this in his new trial motion, he seeks plain error review under the two-step analysis described in Point II.

Corporal Steve Crain, while describing Defendant's explanation of his altercation with Lisa over a pornographic video, said Defendant "told me that he hit his wife, once." Sergeant Mike Rogers testified that Defendant told him that he had never hit a woman, but when Rogers said that he knew better, Defendant replied that he had "never hurt them."

■ Generally, uncharged misconduct is not admissible to prove guilt of the crime charged. *State v. Ponder*, 950 S.W.2d 900, 911 (Mo.App.1997). To violate this rule, the evidence must show the accused "committed, was accused of, was convicted of, or was definitely associated with, the other crimes or misconduct." *Id.*

---

**8.** For that matter, defense counsel elicited similar hearsay from two other witnesses. He questioned one witness about talks with Lisa on the subject of leaving Defendant, and asked the other about Lisa's expressions of marital dissatisfaction and intent to divorce Defendant. The sole defense witness also described, on direct examination, marital discord between Lisa and Defendant.

at 911–12, *quoted in State v. Turner*, 242 S.W.3d 770, 777 (Mo.App.2008).

Defendant did not tell Rogers that he hit Lisa or hurt anyone, so those statements are too vague to implicate this rule, let alone constitute plain error. "Vague remarks cannot be characterized as clear evidence to associate the accused with other crimes." *Ponder*, 950 S.W.2d at 912.

Crain's passing comment was mentioned again only when defense counsel made Crain repeat it in cross-examination. It is not "evident, obvious and clear" error to admit relatively insignificant testimony without objection, especially when the defense asks the witness to repeat it. Point denied.

### Conclusion

We have carefully considered the plain error claims, but find them without merit. The evidence, viewed favorably to the result, supports the convictions. Defendant's points are denied. The judgment and convictions are affirmed.

RAHMEYER, P.J., and FRANCIS, J., concur.