

# In the
# Missouri Court of Appeals
# Western District

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | WD85834 |
| | ) | |
| v. | ) | OPINION FILED: |
| | ) | FEBRUARY 13, 2024 |
| SADIQ JAMARIO MOORE, | ) | |
| | ) | |
| Appellant. | ) | |

**Appeal from the Circuit Court of Randolph County, Missouri**
The Honorable Scott Alan Hayes, Judge

Before Special Division: Gary D. Witt, Chief Judge, Presiding, Cynthia Martin, Judge,
and James E. Welsh, Special Judge

Sadiq Jamario Moore ("Moore") appeals from the trial court's judgment convicting him of the class A felony of second-degree murder in violation of section 565.021;[1] the class A felony of unlawful use of a weapon in violation of section 571.030; the class B felony of first-degree burglary in violation of section 569.160; and three counts of felony armed criminal action in violation of section 571.015. Moore contends that the trial court erred when it overruled his objections to the introduction of statements made by a co-conspirator and when it overruled his request for a mistrial after a witness for the State testified that Moore had a probation and parole officer. Additionally, Moore argues the

---

[1]All statutory references are to RSMo 2016 as supplemented through June 27, 2020, unless otherwise indicated.

trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence from which a rational trier of fact could find Moore guilty beyond a reasonable doubt.  Finding no error, we affirm.

## Factual and Procedural Background

Viewing the evidence in the light most favorable to the verdict[2] establishes that in the early morning of June 27, 2020, Moore, D.F. ("Co-conspirator 1"), and T.M. ("Co-conspirator 2") planned to rob Victim with Co-conspirator 1 serving as the driver for their escape.  Around 4:00 a.m., Victim and his family heard two loud bangs at their front door followed by someone saying "police."  Victim and his fiancé then heard their front door being kicked in and got out of bed to investigate.  As soon as Victim opened his bedroom door he was shot by someone standing in his living room.  After Victim had been shot, the shooter ran from the home.  When Co-conspirator 1 heard gunshots, he fled the scene without Moore or Co-conspirator 2.  Victim succumbed to his injuries, and died.

Co-conspirator 1 fled to an apartment occupied by D.W., K.H., and S.B.  Co-conspirator 1 was frantic and told D.W., K.H., and S.B. that he had lost "[Moore] and [Co-conspirator 2]"[3] and that they had to find them as soon as possible.  Co-conspirator 1

---

[2]"On appeal from a jury-tried case, we view the facts in the light most favorable to the jury's verdict."  *State v. Morgan*, 674 S.W.3d 497, 500 n.1 (Mo. App. W.D. 2023) (citation omitted).

[3]Throughout the record on appeal, Moore and his co-conspirators are sometimes identified by alternate names.  For example, "Chiraq" is an alter ego of Moore.  To conform with the redaction requirements in Rule 84.015 we have chosen not to refer to either co-conspirator by their given or alternate names.

All rule references are to *Missouri Court Rules, Volume 1 -- State, 2022* unless otherwise noted.

2

told the group: "I took them to hit a lick[4] when I heard gunshots [sic] I left." D.W., K.H., and S.B. then accompanied Co-conspirator 1 in his vehicle and searched Mexico, Missouri for Moore and Co-conspirator 2 before giving up and heading back to S.B.'s apartment. Shortly after arriving back at S.B.'s apartment, Co-conspirator 1 received a phone call and rushed out the door. Co-conspirator 1 returned to the apartment about fifteen minutes later with Moore and Co-conspirator 2. Moore, Co-conspirator 1, and Co-conspirator 2, presumably in reference to D.W., were overheard saying "I don't think he'll snitch."

Around midnight on July 16, 2020, Co-conspirator 2 was pulled over for a traffic stop in Quincy, Illinois. Moore was in the passenger seat. Co-conspirator 2 provided the officer with his Missouri driver's license, while Moore gave the officer a false name and birthdate claiming that he did not have any physical identification. After the officer asked Moore to step out of the vehicle, Co-conspirator 2 and Moore fled. Co-conspirator 2 and Moore continued to evade police until their vehicle became stuck on railroad tracks after which they abandoned their vehicle and fled on foot into a wooded area, successfully avoiding police capture. The officer in pursuit searched the abandoned vehicle and found Co-conspirator 2's driver's license and a bank card belonging to Moore.

On July 31, 2020, Co-conspirator 1 was arrested in Quincy, Illinois. Next, Moore was arrested at the residence of M.T. in Columbia, Missouri on October 8, 2020. Finally, Co-conspirator 2 was arrested on November 21, 2020 in Las Vegas, Nevada. Moore was

---

[4]In later testimony by K.H., it is implied that the phrase "to hit a lick" means to commit a robbery.

3

charged with the class A felonies of second-degree murder and unlawful use of a weapon, the class B felony of first-degree burglary, and three counts of felony armed criminal action.

Before trial, the trial court granted Moore's motion in limine restricting the State from referring to "[a]ny evidence that Defendant may have pled guilty to or been convicted of any criminal offense." Also, before trial the State and Moore stipulated that L.R., Moore's probation and parole officer, would be removed from the State's witness list once Moore stipulated to the phone number he used during June 2020.

At trial, the State presented evidence of Moore's palm print collected from the front door knob of Victim's home as well as evidence that Moore's phone connected to a cell tower near Victim's home on the morning of Victim's death. M.T., a witness for the State, testified that Moore told her that he was at Victim's home the night of the murder and that the plan was only to rob Victim and that "it was never supposed to happen like it did." Additionally, the statements made by Co-conspirator 1 at S.B.'s apartment were admitted over Moore's objection through K.H.'s testimony, D.W.'s testimony, and D.W.'s written statement.

At the end of the second day of trial, the State called Officer W.J. and during his testimony, the following exchange ensued:

Q: And were you aware if [Moore], the Defendant, had any connection to Kirksville, Missouri?

A: Yes, ma'am, I was made aware.

Q: And what was that connection?

4

A: I was made aware that the Defendant's father lives in Kirksville, Missouri. He also had a probation and parole officer located-

Moore objected to the statement and requested a mistrial arguing that the volunteered testimony that he had a probation and parole officer violated the trial court's ruling on his motion in limine and his right to a fair trial. The trial court dismissed the jury for the day and allowed Moore and the State the opportunity to submit caselaw for the court's consideration and to argue the request for a mistrial. The next morning, the trial court denied Moore's request for a mistrial and instead informed the jury that the testimony of Officer W.J. from the preceding day was stricken from the record and that they should only consider his testimony moving forward.

The jury found Moore guilty of the class A felonies of second-degree murder and unlawful use of a weapon, the class B felony of first-degree burglary, and three counts of felony armed criminal action. The trial court entered judgment ("Judgment") and sentenced Moore to imprisonment in the Missouri Department of Corrections for twenty-five years on the second-degree murder conviction; ten years on the unlawful use of a weapon conviction, to be served concurrently; ten years on the first-degree burglary conviction, to be served concurrently; and five years on each armed criminal action conviction, to be served concurrently with each other and consecutively to Moore's sentence on the second-degree murder conviction. In total, Moore was sentenced to thirty years imprisonment.

Moore appeals.

5

## Standard of Review

"We review the trial court's decision to admit or exclude evidence at trial for abuse of discretion." *State v. Morgan*, 674 S.W.3d 497, 502 (Mo. App. W.D. 2023) (quoting *State v. Bowman*, 663 S.W.3d 916, 923 (Mo. App. W.D. 2023)). An abuse of discretion has occurred when the "decision to admit or exclude evidence is clearly against the logic of the circumstances then before the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *State v. Coyle*, 671 S.W.3d 702, 714 (Mo. App. W.D. 2023) (citation and internal quotations omitted). "On direct appeal, this Court reviews the trial court's rulings on admission of evidence for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *State v. Perkins*, 656 S.W.3d 285, 302 (Mo. App. E.D. 2022) (citation omitted). A trial court's error in admitting evidence is prejudicial "if the error so influenced the jury that, when considered with and balanced against all of the evidence properly admitted, there is a reasonable probability that the jury would have reached a different conclusion without the error." *Morgan*, 674 S.W.3d at 502 (citation omitted).

"We review the trial court's refusal to grant a mistrial for abuse of discretion." *State v. Russell*, 656 S.W.3d 265, 278 (Mo. App. W.D. 2022) (citation omitted). "A trial court abuses its discretion when its ruling is clearly against the logic of the circumstances then before it and when the ruling is so arbitrary and unreasonable as to shock one's sense of justice and indicate a lack of careful consideration." *Id.* "If reasonable minds could

6

differ on the propriety of the ruling, no abuse of discretion has occurred." *State v. Simrin*, 384 S.W.3d 713, 721 (Mo. App. S.D. 2012).

## Analysis

Moore raises four points on appeal. Point One argues that the trial court abused its discretion by overruling Moore's objections to the testimony and written statement of D.W. regarding out-of-court statements made by Co-conspirator 1 because the evidence was inadmissible hearsay that violated his right to confrontation. Point Two alleges that the trial court abused its discretion in overruling his objections to the testimony of K.H. regarding statements made by Co-conspirator 1 on the same grounds as Point One. Point Three asserts that the trial court abused its discretion in overruling Moore's request for a mistrial after a witness for the State testified that Moore had a probation and parole officer because the testimony violated his due process rights to a fair trial and the presumption of innocence. Point Four argues that the trial court erred in overruling Moore's motion for judgment of acquittal because there was insufficient evidence from which a rational finder of fact could find Moore guilty beyond a reasonable doubt.

***The trial court did not abuse its discretion by admitting evidence of Co-conspirator 1's statements through the written statement of D.W. and the testimony of D.W. and K.H. (Point One and Point Two)***

Moore's first and second points on appeal argue that the out-of-court statements made by Co-conspirator 1 were inadmissible hearsay that violated Moore's constitutional right to confront witnesses. Point One contends that the trial court abused its discretion by overruling Moore's objection and admitting Co-conspirator 1's statements through the testimony and written statement of D.W. Point Two argues that the trial court abused its

7

discretion by overruling Moore's objection and admitting Co-conspirator 1's statements through the testimony of K.H. We review the points together.

Moore's first and second points on appeal are impermissibly multifarious as they challenge the admission of a Co-conspirator's statements on two distinct grounds. *See Jackson v. Missouri State Bd. Of Nursing*, 673 S.W.3d 917, 920 n.4 (Mo. App. W.D. 2023) ("A point relied on should contain only one issue, and parties should not group multiple contentions about different issues together into one point relied on") (citation omitted). A hearsay objection is grounded in the rules of evidence and challenges the admission of a witness's out-of-court statement for its truth. *See State v. Minner*, 311 S.W.3d 313, 319-320 (Mo. App. W.D. 2010). A Confrontation Clause objection is grounded in the Sixth Amendment of the United States Constitution and challenges the admission of a witness's testimonial hearsay statement (even if otherwise admissible pursuant to an exception to the hearsay rule) because admission of the statement without affording a defendant the right to cross-examine the witness violates the right to confront witnesses. *Minner*, 311 S.W.3d at 319 (observing that "testimonial hearsay (a subsection of all evidence that is hearsay), ***even if*** qualified as an exception to the hearsay rule, cannot be admitted in a criminal case, as a general rule, because of the Confrontation Clause") (citing *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004)). "A hearsay objection does not preserve constitutional claims relating to the same testimony." *Id.* (quoting *State v. Chambers*, 891 S.W.2d 93, 104 (Mo. banc 1994)).

Here, though Moore's first and second points relied on refer to both grounds for objecting to admission of Co-conspirator 1's statements, the argument portion of Moore's

8

brief only develops the hearsay objection with but a passing, undeveloped, reference to the Confrontation Clause. During oral argument, Moore's counsel conceded that Moore is not arguing that admission of Co-conspirator 1's statements violated the Confrontation Clause and agreed that reference to the Confrontation Clause in Moore's first and second points relied on should be disregarded. We thus elect to disregard the impermissibly multifariousness nature of Moore's points and will analyze only Moore's contention that the trial court erred in admitting Co-conspirator 1's statements because they were inadmissible hearsay.

"Hearsay statements are out-of-court statements used to prove the truth of the matter asserted, which, as a rule, are inadmissible." *Perkins*, 656 S.W.3d at 303 (citing *State v. Barnett*, 980 S.W.2d 297, 306 (Mo. banc 1998)). However, statements made by a co-conspirator that are in furtherance of the conspiracy are admissible under an exception to the rule against hearsay. *See State v. Hoover*, 220 S.W.3d 395, 408-09 (Mo. App. E.D. 2007). This exception applies "even when the conspirators are not charged with conspiracy," however, there must be evidence, independent of the statement itself, that a conspiracy exists. *State v. McFarland*, 259 S.W.3d 621, 625 (Mo. App. S.D. 2008) (citation omitted); *and see State v. Cornman*, 695 S.W.2d 443, 446 (Mo. banc 1985) ("[w]e agree that before a hearsay statement of one conspirator may be introduced in evidence against a coconspirator, there must be a showing, by evidence independent of the statement, of the existence of a conspiracy"). Therefore, our review requires us to first determine if there was evidence that a conspiracy existed independent of Co-

9

conspirator 1's statements, and if so, whether the statements were made in furtherance of that conspiracy.

Moore's first point asserts that D.W.'s testimony that Co-conspirator 1 said "I took them to hit a lick. When I heard [gunshots] I left," and that he had lost "[Moore] and [Co-conspirator 2]," was inadmissible hearsay. Moore's second point asserts that K.H.'s testimony that Co-conspirator 1 said "that they had went to rob [Victim], or whatever" was also inadmissible hearsay. Moore denies that a conspiracy existed and argues alternatively that even if a conspiracy existed it had ended by the time of Co-conspirator 1's statements to D.W. and K.H. Moore thus argues that the trial court abused its discretion in overruling his hearsay objection and admitting Co-conspirator 1's statements. We disagree.

At trial, the evidence plainly established that Moore, Co-conspirator 1, and Co-conspirator 2 collectively developed a plan to rob Victim and attempted to carry out that plan. There was sufficient evidence of a conspiracy between Moore, Co-conspirator 1, and Co-conspirator 2 to commit a crime. Moore's argument to the contrary is without merit.

Moore argues, however, that Co-conspirator 1's statements to D.W. and K.H. were not made in furtherance of the conspiracy because they were made after the crime was committed. "Generally, out-of-court statements made by a co-conspirator after the crime has been accomplished are hearsay and inadmissible against the other conspirators." *Hoover*, 220 S.W.3d 395, 408-409 (citation omitted). However, "[i]f a conspiracy continues for any purpose, such as the concealing of the crime or taking measures to

10

prevent or defeat prosecution, the declarations of one co-conspirator are admissible against the other, even if made after the completion of the crime which had been the objective of the conspiring." *State v. Jacobs*, 813 S.W.2d 318, 322 (Mo. App. W.D. 1991) (citation omitted); *and see Moss v. State*, 10 S.W.3d 508, 512 (Mo. banc 2000) ("A witness may testify to statements of a co-conspirator that show the furtherance of the conspiracy and the fact that declarations are made by a conspirator after the crime has been consummated does not necessarily make such declarations inadmissible") (citation omitted).

Here, Co-conspirator 1 fled the scene of the crime he had conspired to commit with Moore and Co-conspirator 2. He did so after hearing gunshots and in the process left Moore and Co-conspirator 2 behind. He arrived shortly thereafter to S.B.'s apartment frantic to find Moore and Co-conspirator 2. The statements Co-conspirator 1 then made, and about which D.W. and K.H. testified, were made within thirty minutes of the shooting. *See State v. Finley*, 588 S.W.2d 229, 231 (Mo. App. W.D. 1979) (holding that statements overheard by co-conspirators only minutes after a robbery occurred and while they were actively seeking to elude police were "admissible against all"). After making the statements, Co-conspirator 1 persuaded S.B., D.W., and K.H. to accompany him in a search for Moore and Co-conspirator 2. After the search was unsuccessful and the parties returned to S.B.'s apartment, Co-conspirator 1 received a phone call, "bolted" out the door, and came back with Moore and Co-conspirator 2. It can be inferred from this evidence that Co-conspirator 1's frantic statements in the moments after he fled the scene of a planned robbery were meant to persuade S.B., D.W., and K.H. to help him search for

11

Moore and Co-conspirator 2 to avoid their capture by police. *See e.g.*, *State v. Reed*, 452 S.W.2d 71, 74 (Mo. 1970) (finding that "getting away is certainly one of the final objectives of a consummated robbery"). It can be reasonably inferred from the evidence that Co-conspirator 1 feared he would be arrested and prosecuted if Moore and Co-conspirator 2 were captured. We conclude that Co-conspirator 1's statements, though made after the attempted robbery of Victim, were nonetheless in furtherance of the conspiracy to commit the planned crime rendering the statements admissible under the co-conspirator exception to the hearsay rule. *See Jacobs*, 813 S.W.2d at 322.

Points One and Two are denied.

### *The trial court did not abuse its discretion by overruling Moore's request for a mistrial. (Point Three)*

Moore's third point contends that the trial court abused its discretion in overruling Moore's request for a mistrial because the testimony offered by Officer W.J. about Moore having a probation and parole officer violated his right to a fair trial and the presumption of innocence. The remedy of mistrial is drastic and "should be employed only in the most extraordinary circumstances." *State v. Boyd*, 659 S.W.3d 914, 926 (Mo. banc 2023) (citation omitted). "Whether to grant a mistrial is left to the discretion of the trial court because the trial court is in the best position to observe the impact of the problematic incident." *Id.* (citation omitted).

Moore asserts that Officer W.J.'s testimony volunteering that he had a "probation and parole officer" was inadmissible as the evidence of his prior criminal activity is

12

unfairly prejudicial and, thus, not legally relevant.[5]  As a result, Moore claims that the

statements violated his right to a fair trial and presumption of innocence as the jury may

have convicted him because of his propensity to commit crimes rather than his actual

guilt.  Therefore, the only appropriate remedy to cure the error, Moore argues, was a

mistrial.  We disagree.

"When a witness unexpectedly volunteers inadmissible information, the action

called for rests in the trial court's discretion."  *State v. Burch*, 939 S.W.2d 525, 528 (Mo.

App. W.D. 1997) (citation omitted).  The trial court who observed the statements "is in

---

[5]The trial court had granted Moore's motion in limine to prohibit the mention of
any prior criminal activity.  Plainly, Officer W.J.'s testimony about Moore's probation
and parole officer violated this pretrial ruling.  While Moore's probation and parole
officer had been endorsed as a witness by the State, the parties stipulated to strike the
officer from the witness list in exchange for Moore stipulating to the phone number he
possessed during June 2020.  That renders Officer W.J.'s volunteered reference to the
probation and parole officer perplexing.

The State claims on appeal that the general question asked of Officer W.J. about
Moore's connection to Kirksville was *likely* asked for the purpose of proving that Moore
lived in Kirksville.  Although there is no assertion by Moore of prosecutorial misconduct
in inquiring of Officer W.J. about Moore's connection to Kirksville, we are troubled by
the State's acknowledgment at trial that "there will be other testimony that [Moore] lived
in Kirksville," made when Moore's objection to Officer W.J.'s volunteered testimony was
being addressed with the trial court.  In other words, there was no need to ask Officer
W.J. about Moore's connection to Kirksville because other evidence the State intended to
(and did) admit at trial otherwise established the connection.

While we recognize that Officer W.J.'s volunteered statement about Moore's
probation and parole officer was not overtly solicited by the State, under the
circumstances in this case, the question and resulting answer at best suggest a failure by
the State to adequately prepare Officer W.J. to avoid violating a plain (and common) in
limine ruling, and at worst suggest an effort to surreptitiously inject potentially
prejudicial evidence into the record despite knowing the evidence was inadmissible.
Neither explanation is satisfactory, though whatever the explanation for Officer W.J.'s
volunteered testimony, the trial court's decision to overrule Moore's motion for a mistrial
was not an abuse of discretion.

13

the best position to determine whether the incident had a prejudicial effect on the jury, as well as to determine the appropriate measure to remedy the situation." *Simrin*, 384 S.W.3d at 721 (internal brackets and quotation omitted). In many cases, "[t]he prejudicial effect of a statement can be removed by striking the statement and instructing the jury to disregard it." *Burch*, 939 S.W.2d at 528-29 (citing *State v. Harris*, 547 S.W.2d 473, 475 (Mo. banc 1977)).

Here, the reference to Moore's probation and parole officer was brief and only occurred once. *See Simrin*, 384 S.W.3d 713, 721 (finding that it was not an abuse of discretion to deny a mistrial because the reference to defendant's parole officer was brief and only occurred once). Officer W.J. did not reference any specific crime committed by Moore, nor did he mention the timing of any prior criminal activity. *See State v. Boulware*, 923 S.W.2d 402, 406 (Mo. App. W.D. 1996) (holding that where a reference to the defendant's parole status was vague, indefinite, and did not reference a specific crime it was not error for the trial court to deny ordering a mistrial). As soon as the statement was made, Moore immediately requested a mistrial and the trial court dismissed the jury for the evening. After denying Moore's request for a mistrial, the trial court struck Officer W.J.'s statements from the record and issued a curative instruction for the jury to disregard any previous testimony from the officer and to consider only his testimony moving forward. *See State v. Green*, 812 S.W.2d 779, 785 (Mo. App. W.D. 1991) ("Ordinarily, the trial court acts within its discretion and cures error in the admission of evidence by withdrawing the improper evidence and instructing the jury to disregard it, rather than declaring a mistrial") (citation omitted). Since the reference to

Moore's probation and parole officer was brief, vague, and only occurred once, we do not find the trial court's decision to strike the testimony and issue a curative instruction instead of ordering a mistrial to be "against the logic of the circumstances and . . . so unreasonable as to indicate a lack of careful consideration" constituting an abuse of discretion. *Simrin*, 384 S.W.3d at 721.

Point Three is denied.

***The trial court did not err by denying Moore's motion for judgment of acquittal because there was sufficient evidence to prove his guilt beyond a reasonable doubt. (Point Four)***

Moore's fourth point argues that the trial court erred in overruling his motion for judgment of acquittal because there was insufficient evidence from which a reasonable finder of fact could find that he was guilty beyond a reasonable doubt of being "a participant in the events that led to the death of [Victim]."

Moore's point on appeal does not specify which of his convictions was not supported by sufficient evidence. However, a generous reading of the point on appeal along with the argument portion of Moore's brief indicates that Moore believes none of his convictions were supported by sufficient evidence. The premise of his contention is inherently dependent on the success of his contention that the statements of Co-conspirator 1 were inadmissible. Moore's fourth point on appeal argues that without the statements of Co-conspirator 1, the remaining evidence (his palm print on the Victim's front door, his cellphone pinging a tower near Victim's home on the morning of the shooting, and his statement to M.T. about being present at the time of Victim's murder)

15

was "highly circumstantial" and, thus, not sufficient to prove his guilt beyond a reasonable doubt.

We have already determined in our discussion of Moore's first and second points on appeal that Co-conspirator 1's statements to D.W. and K.H. were properly admitted at trial. Moore does not argue that his convictions were not supported by sufficient evidence if Co-conspirator 1's statements are considered.

Point Four is denied.

## Conclusion

The trial court's Judgment is affirmed.

_Cynthia L. Martin_
Cynthia L. Martin, Judge

All concur