STATE of Missouri, Respondent,

v.

Carlton Wayne MITCHELL, Appellant.

No. 52865.

Missouri Court of Appeals,
Eastern District,
Division Four.

June 14, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 3, 1988.

Application to Transfer Denied
Sept. 13, 1988.

604

Christopher E. McGraugh, Asst. Public Defender, Clayton, for appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent.

GRIMM, Judge.

In this jury tried case, defendant appeals his conviction of robbery in the first degree, in violation of § 569.020 RSMo 1986, assault in the first degree, in violation of § 565.050 RSMo 1986, and two counts of armed criminal action, in violation of § 571.015 RSMo 1986.

There are four allegations of error. First, that the trial court erred in refusing to sustain defendant's request to remove venireperson Rosemary Lee for cause, since she "was under a physical ailment which seriously effected her deliberations." We disagree, because defendant did not challenge Lee for cause and furthermore defendant did not show that he sustained any prejudice as a result of Lee serving as a juror. Second, that the trial court erred in not sustaining defendant's motion for mistrial upon notice of newly discovered evidence. In the alternative he alleges that the trial court erred in not allowing defendant a continuance based upon notice of newly discovered evidence. Or alternatively, that the trial court erred in not granting sanctions against the state and excluding the newly discovered evidence for failure to comply with Rule 25. We disagree, because there was no abuse of discretion or manifest injustice by the trial court in denying defendant's motions. Third, that "the trial court erred in overruling [his] motion to suppress identification and allowing in-court testimony concerning suggestive pretrial identification of the [defendant]." We disagree, because defendant did not file the requisite pretrial motion to suppress the testimony nor did he object at trial and thus the point is not preserved for review. Fourth, that the trial court erred in ruling that the defendant must participate in an in-court identification experiment before the jury in that the demonstration violated his rights against self-incrimination. We disagree, because the privilege against self-incrimination is not violated by an order of the trial court requiring a defendant to speak, for voice identification purposes, in front of a jury. We affirm.

On February 4, 1986, Tony Zaitz was working at the Fina gas station in Arnold.

Around 8:40 p.m. that evening, Zaitz was sitting in the gas station booth when he heard a noise. He turned around and saw someone wearing a ski mask and holding a pistol. The individual, later identified as the defendant, pointed the gun up towards the window and said, "Let me in, m____ f____, and I ain't messing around."

Zaitz let the defendant in; he told Zaitz to give him all the money. The defendant first told Zaitz to put his hands up, and then told him to get them back down. Two or three times the defendant told Zaitz to "hurry up." Zaitz gave the defendant the cash drawer; the defendant took all the bills out, dropped the cash drawer on the floor, and demanded more money. Zaitz told him there was more money rolled up underneath the shelf where the cash drawer had been. Zaitz then reached down to get the money; while bending over, he heard a gun go off. Zaitz was shot in the left shoulder. The defendant ran away and Zaitz called the police.

Zaitz recognized the defendant as the person who robbed him. This recognition was based on defendant's distinctive voice, which he remembered from elementary school, junior high school, and from other contacts since school. About forty-five minutes after the robbery, Zaitz, who was then at the hospital, told the police that the defendant was the person who had robbed him.

Two days later, Zaitz and his father went to the Arnold Police Department. As Zaitz and his father walked down a hall, they heard someone bang on a cell door and yell that he had to go to the bathroom and that he was cold. Zaitz immediately turned and motioned to his dad, who was standing outside the door, and said, "that's him." The person yelled again; Zaitz told his father that it was definitely the voice of the defendant. Zaitz then asked a police officer, who was banging on the cell door and the officer replied, "they think that's the guy that shot you." Zaitz responded, "that is him." Before hearing the defendant yell, no one had indicated to Zaitz that defendant would be in the building.

In court, Zaitz recognized defendant's voice as the voice of the person who robbed him. He also identified the defendant to be that person.

On appeal, defendant first alleges that the trial court erred in refusing to sustain his request to remove venireperson Rosemary Lee for cause because she "was under a physical ailment which seriously effected her deliberations."

During voir dire, after being asked by the prosecutor about any medical problems which would cause problems in sitting as a juror, Ms. Lee said:

> I don't really have an illness. I don't have a cold or anything like that. The only problem is I have with closeness. If I'm like in a hospital, I've done different times in areas confined, an area is stuffy, then I pass out.

Lee explained that she might pass out in the jury room if it were exceptionally hot.

Defense counsel did not address any question to Lee on this subject. However, the trial court questioned her about serving. She said that she could not say that she would not pass out, but that "the chances are I probably wouldn't." In the last twenty-five years, she had passed out eight to ten times. Lee did not ask to be excused, but said that she wanted the trial court "to know if I have a problem I'll whistle."

■ We first observe that the record does not support defendant's allegation that the court erred in denying his request for removal "for cause." Following voir dire, the court discussed, with the attorneys, several jurors that had asked to be excused. Ms. Lee was mentioned, but at the conclusion of the discussion, the trial court said she hadn't asked to be excused, but "[s]he just said she wanted us to know about it." She was not excused at that time. The State then made its challenges for cause. Thereafter, when the defendant was asked if there were any challenges for cause, the only challenge was to juror Adeline Steinkamp. The challenge to her was sustained, and the defendant made no other challenges for cause, as to Lee or anyone else. Thus, the trial court did not err,

because defendant did not challenge Lee for cause.

Further, during the two-day trial, there is no indication that Lee had any problems hearing, seeing, or understanding what went on in court. The jury deliberated from 2:26 p.m. until 10:52 p.m., or approximately eight and one-half hours. There was no evidence that Lee had any fainting spells or had any sort of problem performing her duty. Defendant has not shown that he sustained any prejudice as a result of Lee serving as a juror. Point denied.

Defendant's next point is that the trial court erred in not sustaining defendant's motion for mistrial upon the notice of newly discovered evidence. In the alternative, he alleges that the trial court erred in not allowing defendant a continuance based upon notice of newly discovered sanctions. Or alternatively, that the trial court erred in not granting sanctions against the State and excluding the newly discovered evidence for failure to comply with Rule 25.

On the morning of the second day of trial, Jeff Christian testified for the State that on February 4, 1986, at about 5:30 p.m., he and defendant went to the Christian's house. There, the defendant said that he needed to borrow Christian's father's gun, because he was going to commit a robbery. Christian gave him the gun, and defendant left. Christian recounted that his girl friend, Becky White, came over that night about 7:30 p.m., and they were together until approximately 10:45 p.m. Defendant, according to Christian, returned at approximately 1:30 a.m. Christian met defendant in the kitchen, where defendant gave the gun to him and told him to put it back.

Following the noon recess, the assistant prosecuting attorney told the court that he had been approached during the noon hour by Becky White. At that time, White told him that defendant "had in fact come back to the Christian house on the evening of February 4th while she was present. That at that time he took out a large amount of money, counted it in Jeffrey Christian's bedroom and personally handed the weapon

back to Jeff Christian himself." The assistant prosecuting attorney explained that after this disclosure, both he and defense counsel had the opportunity to talk to White and Christian twice for about forty-five minutes about the change in testimony. During these discussions, Christian acknowledged that he had lied, and that defendant had come into the house with the money and counted it.

Defense counsel moved for a continuance on the ground that the new evidence was a surprise. The court denied the motion for a continuance and told defense counsel he could talk to any witnesses he needed to that evening; that the next day, the court would "take up any requests that may have come out of that." Defense counsel then asked that White's testimony be excluded because of surprise, or, alternatively, that the court "exclude the additional testimony [White] has come up with today." The court denied the motion to exclude the additional testimony. Defense counsel then moved for a mistrial, which was subsequently overruled by the court.

Christian took the stand again and admitted that a portion of his earlier testimony w'.s not true. He explained that defendant returned to his house around 10:30; White was there, and that defendant, White, and he went to his room. There, the defendant counted the money and returned the revolver. Christian also testified that defendant had said "he had robbed the gas station across the highway and that's where the money came from." White, later, corroborated this testimony.

■ Defendant's first part of his point alleges that the trial court should have granted his motion for a mistrial. The granting of a mistrial is a drastic remedy and the trial court should only exercise this power in extraordinary circumstances. *State v. Gatlin*, 539 S.W.2d 731, 733 (Mo.App.E.D.1976). The trial court's decision on whether or not to grant a mistrial will not be disturbed in the absence of an abuse of discretion. Compare, *State v. Davis*, 653 S.W.2d 167, 176 (Mo. banc 1983). Here, defense counsel was allowed to confer with both Christian and White before

they testified. Further, the court indicated a willingness to consider further remedies after defense counsel had the opportunity to talk with other witnesses. The record does not reflect that any further remedy was sought. After reviewing the record, we find no abuse of discretion by the trial court in denying defendant's motion for a mistrial.

■ Defendant, alternatively, asked the trial court for a continuance, which was allegedly erroneously denied. Defendant, though, did not raise this issue in his motion for new trial, and thus the alleged error is not preserved for appellate review. *State v. Nave*, 694 S.W.2d 729, 735 (Mo. banc 1985). Defendant then must prove that it was plain error to deny his motion for continuance, i.e., that manifest injustice or a miscarriage of justice occurred because of this denial. Rule 30.20.

The granting or denial of a motion for continuance is within the sound discretion of the trial court. *Nave* at 735. Also, a very strong showing is required to show that the trial court abused its discretion in denying a continuance. *Id.* at 735.

Here, the assistant prosecutor immediately disclosed the change in White's testimony to defense counsel, and together, they talked with both White and Christian during the noon recess. Thereafter, both counsel advised the court what had happened. The court, in ruling on defendant's motion for continuance, told defense counsel that he could talk to any witnesses that he wanted to that evening and that the next morning he would entertain any requests which might come out of it. The record does not disclose any requests the next day for a continuance based on the "surprise" testimony. Thus, from the record we find no manifest injustice or abuse of discretion by the trial court in denying defendant's motion for continuance.

■ Defendant also, in this point, alleges that his alternative motion to exclude the newly discovered evidence was erroneously denied for failure to comply with Rule 25, which pertains to discovery. Defendant

did not raise this issue in his motion for new trial and thus this issue is not preserved for review. Rule 30.20. Defendant, therefore, must prove plain error. *Id.*

Rule 25.16 states:

If at any time during the course of the proceeding it is brought to the attention of the court that *a party has failed to comply with an applicable discovery rule* or an order issued pursuant thereto, the court may order such party to make disclosure of material and information not previously disclosed, grant a continuance, exclude such evidence, or enter such other orders as it deems just under the circumstances ... (emphasis added).

Here, there is no evidence that the State violated any discovery rule. Defendant has not shown that the prosecutor possessed knowledge of White's "surprise" testimony prior to the trial or that the prosecutor was delinquent in passing along the new information. From the record, we cannot find any manifest injustice by the trial court in failing to exclude the newly discovered evidence. Point denied.

For his next point, defendant alleges that "the trial court erred in overruling [his] motion to suppress identification and allowing in-court testimony concerning suggestive pretrial identification of the [defendant]."

■ To preserve a challenge to identification testimony, a defendant is required to file a pretrial motion to suppress the testimony, object timely at trial, and include the issue in his motion for new trial. *State v. Pettit,* 719 S.W.2d 474, 477 (Mo.App.E.D. 1986). Contrary to defendant's allegation, although defendant filed two motions to suppress, neither of them were directed towards identification. No objection was made when Zaitz identified the defendant in court. Thus, the point is not preserved.

■ Even if we were to reach defendant's allegation of error, we would conclude that the trial court did not err in allowing the in-court testimony. At the time of the crime, the defendant spoke several times, giving various orders. Zaitz had ample opportunity to hear defendant's

voice, which he recognized from school and from the community. Zaitz, on his own volition, forty-five minutes after the robbery, told police the name of the defendant as the person who had robbed him. Also, at the Arnold Police Department, Zaitz identified a voice coming from a cell as belonging to defendant, without having any prior knowledge that defendant was at the jail. Identification by means of a defendant's voice is a permissible method. *Eichelberger v. State,* 524 S.W.2d 890, 894 (Mo.App.E.D.1975).

This case does not involve a pretrial lineup or a photographic identification. Here, the victim identified the defendant as being the one who had robbed him directly after the crime. The identification was not the result of any procedure set up by the police. There is no evidence that the out-of-court identification tainted the in-court identification, and therefore, the in-court identification could not have been properly suppressed by the trial court. *State v. Johnson,* 632 S.W.2d 43, 45 (Mo.App.W.D. 1982). There was no error, plain or otherwise, in allowing the in-court testimony about the out-of-court identification. Point denied.

■ Defendant's last issue on appeal is that the trial court erred in ruling that the defendant must participate in an in-court identification experiment before the jury in that the demonstration violated his rights against self-incrimination. Basically, the complaint is that defendant was required to speak certain words to the jury.

At trial, the state asked defendant to make several statements similar to those uttered during the robbery. Defense counsel objected "pursuant to our previously filed motion that it doesn't go to substantiate the identification." The objection was overruled. After defendant made the statements, Zaitz testified that he recognized the voice as belonging to the person who had robbed him.

The legal file and record furnished us does not contain any motion similar to that referred to in defendant's allegation of error. We glean from his brief that he con-

tends his constitutional privilege against self-incrimination was violated.

Compelling a defendant to "... to write or speak for identification, to appear in court, to stand, to assume a stance, to walk, or to make a particular gesture" does not come within the privilege against self-incrimination. *United States v. Wade*, 388 U.S. 218, 223, 87 S.Ct. 1926, 1930, 18 L.Ed.2d 1149, 1155 (1967) (quoting *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966)). Nor is his privilege against self-incrimination violated by an order of the trial court requiring him to speak, for voice identification purposes, in the presence of the jury. *United States v. Williams*, 704 F.2d 315 (6th Cir.1983), *cert. denied*, 464 U.S. 991, 104 S.Ct. 481, 78 L.Ed.2d 679 (1983); *State v. Morton*, 684 S.W.2d 601 (Mo.App.S.D.1985). See, also, Annotation, Propriety of Requiring Criminal Defendant to Exhibit Self, or Perform Act, or Participate in Demonstration, During Trial and In Presence of Jury, 3 ALR 4th 374 (1981), especially p. 421–424 (citing cases from Arizona, Arkansas, California, Colorado, Louisiana, Oregon, and Texas which approved requirement that defendant utter the words used by the perpetrator; contra, Ohio). The trial court did not err in requiring the defendant to utter the words used by the perpetrator, for it allowed the jury to determine itself if the defendant had a distinctive voice, as testified by Zaitz. Further, it allowed Zaitz to make an in-court identification of the voice. Point denied.

The judgment is affirmed.

SIMON, P.J., and CRANDALL, J., concur.