STATE of Missouri, Respondent,

v.

Maurice J. ROBINSON, a/k/a Maurice
Jerome Robinson, Appellant.

No. SD 31780.

Missouri Court of Appeals,
Southern District,
Division One.

March 8, 2013.

Motion for Rehearing and/or Transfer
to Supreme Court Denied March
18, 2013.

G. Michael Archer, St. Louis, MO, for Appellant.

Chris Koster, Attorney General and Jessica P. Meredith, Assistant Attorney General, of Jefferson City, MO, Respondent.

WILLIAM W. FRANCIS, JR., J.

A jury convicted Maurice J. Robinson ("Robinson") of first-degree robbery (Count III), in violation of section 569.020; armed criminal action (Count IV), in violation of section 571.015; and first-degree burglary (Count V), in violation of section 569.160 [1]. Robinson was sentenced to concurrent thirty-year sentences for Counts III and IV, and a twenty-year sentence for Count V—to run consecutive with Counts III and IV. This appeal followed. We affirm the trial court's judgment.

**Factual and Procedural History**

Robinson does not challenge the sufficiency of the evidence to support his convictions. Accordingly, we set forth only those facts necessary to address Robinson's points. In doing so, we view the evidence in the light most favorable to the jury's verdict. *See State v. Newberry,* 157 S.W.3d 387, 390 (Mo.App. S.D.2005).

In December 2008, Robinson had been working four to six months as a confidential informant for the city of Sikeston. Robinson contacted Bobby Sullivan ("Detective Sullivan"), a detective with the Sikeston Department of Public Safety, and tipped him off that Dewayne Andrews ("Dewayne") [2] was allegedly getting a shipment of cocaine either late Saturday night or early Sunday morning, December 7, 2008. At that time, Dewayne was staying at the home of Laronza Washington ("Washington"), located at 504 Lanning in Sikeston (sometimes referred to as "the residence" or "Washington residence"). Detective Sullivan told Robinson that he could not act immediately on the information and that it would be the first of the week. However, Detective Sullivan told Robinson to "keep an eye on it[,]" and once Robinson "heard they were in town" to page Sullivan.

On December 6, 2008, Robinson was riding around in his car drinking with his good friends Fabayan Larry ("Larry"), Julius Hudson ("Hudson"), and Jerimiha Watson ("Watson").[3] They started talking

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

2. Because a portion of the involved parties share the same surname, for ease of reference, we may at times refer to the parties by their first names. We mean no familiarity or disrespect.

3. Robinson, Larry, Hudson and Watson are sometimes referred to collectively as "the group."

about buying some cocaine and Robinson wanted Larry to see if Dewayne had any. Robinson dropped Larry off at the corner and Larry walked to the front door of the Washington residence and asked for drugs. Dewayne answered the door and Brandon Hamilton ("Hamilton") told Larry they did not have any drugs "at the time." Larry told the group he was told there were no drugs, and Robinson stated that "he [knew] something [was] there." The group then made plans to rob Dewayne at the Washington residence, changed into black clothes, and got two guns. Robinson then drove to Walmart and bought four orange ski masks and gloves in the sporting goods department.

At trial, Billy Landers, the sporting goods clerk at Walmart, testified Robinson bought "[s]ome masks and two pairs of gloves." Larry Strobel ("Strobel"), a Walmart customer, testified that Robinson caught his attention in the sporting goods section because he purchased "four masks and gloves." Strobel stated that a comment was made by one of his friends that it "looked kind of suspicious," and Robinson overheard the comment and responded. As they were walking out of the store, Robinson threatened to shoot them and told them that they "better have [their] 30/30 ready or whatever."

After leaving Walmart, the group parked behind an abandoned house, approximately fifty yards away from the Washington residence. Robinson devised the robbery plan and, wearing orange ski masks, Larry and Watson went to the front door of the Washington home with the two guns, while Robinson and Hudson were let in the back door. Once inside the house, Larry and Watson woke up Dewayne.[4]

Dewayne was made to go into the kitchen and lie on the kitchen floor by individuals wearing orange masks and holding guns. He was told by one in the group to empty his pockets, and was struck in the face with a pistol. The group took "$1,200 and an ounce of cocaine" from him. Once the drugs were secured, the group left the house. Linnie was also assaulted during the robbery.[5]

Robinson was charged, as a prior offender, with the class A felony of first-degree murder (Count I), pursuant to section 565.020, for knowingly causing the death of Linnie by striking him on the head with a pistol and stomping on his head; the unclassified felony of armed criminal action (Count II), pursuant to section 571.015; the class A felony of first-degree robbery (Count III), pursuant to section 569.020, for forcibly stealing money and drugs from Dewayne and Linnie; the unclassified felony of armed criminal action (Count IV), pursuant to section 571.015; and the class B felony of first-degree burglary (Count V), pursuant to section 569.160, for knowingly entering the home at 504 Lanning for the purpose of committing robbery.

Robinson was tried by a jury in Mississippi County on November 14, 2011. At trial, Dewayne testified he recognized Robinson as one of the robbers by his voice. The following colloquy took place:

---

4. In addition to Dewayne and Hamilton, there were other family members and friends at the residence, including Dewayne's children; his uncle, Linnie Andrews ("Linnie"); and Gabriel Mitchell ("Mitchell"). During the robbery, Linnie was knocked to the floor; Hamilton and Mitchell were made to lie on the floor in the hallway; and the remaining occupants were in a back room.

5. Before leaving, Robinson allegedly stomped on Linnie's head while he was on the floor. Robinson and Linnie apparently had a previous altercation some weeks prior to the robbery. Linnie later died from complications of a closed-head injury suffered as a result of blunt-force trauma to the head.

[State:] What were they saying when they were talking?

[Dewayne:] Like give me that shit. Give me that shit, Nigger. Empty out your pockets. I knew when I heard that voice I knew who it was.

[State]: Who was it?

[Dewayne:] [Robinson].

[State:] And how did you know his voice?

[Dewayne:] He got that raspy voice. He got that raspy voice.

[State:] And what do you remember him saying to you?

[Dewayne:] "Give me that shit. Empty your pockets."

[State:] Your Honor, I would ask [Robinson] if he could repeat that statement for the ladies and gentlemen of the jury please, "Give me that shit. Empty your pockets."

[Defense Counsel:] I will object to that, Your Honor. I want it noted for the record that we object to that.

The trial court then took a recess and heard argument from both attorneys outside of the jury's presence. The trial court overruled defense counsel's objection and required Robinson to read the following phrase in front of the jury for voice identification purposes: "Where that shit at? Empty your pockets, Nigger." After making the statement, Dewayne identified Robinson as the voice he heard on the night of the robbery. Dewayne testified that he recognized Robinson's voice because he had an accent—"southern kind of accent[.]" Dewayne testified no one else said anything to him.

Detective John Blakely, Jr. ("Detective Blakely"), with the Sikeston Department of Public Safety, testified at trial because he was the detective on duty when the call came in regarding the subject burglary and assault. His trial testimony took up 104 transcript pages. Over the course of his testimony, Detective Blakely testified, without objection, to various statements made by co-defendants Larry and Hudson to him during the course of his investigation.

At trial, the State elicited evidence from numerous witnesses, without objection, that Robinson purchased orange ski masks and gloves at Walmart prior to the robbery. Detective Blakely was one of the multiple witnesses that testified, without objection, that Robinson had been at Walmart buying ski masks prior to the robbery. Detective Blakely reviewed the Walmart videotapes and testified that he saw Robinson on the video "buying hats" and a pair of gloves. Detective Blakely testified he was told that Robinson had threatened two witnesses as they were leaving Walmart, and the two witnesses identified Robinson from a photo lineup.

Hudson and Larry both testified, without objection, that after the group decided to commit the robbery, they put on black clothes, got guns, and went to Walmart to get ski masks. They both testified that Robinson went in Walmart and bought the masks by himself. Hudson stated that Robinson "came back with the orange ski masks. [Robinson] said he had an altercation with some people in Wal-mart [sic] . . . threatening them I guess."

Robinson did not testify. The jury found Robinson guilty on Counts III through V, but acquitted him on Counts I and II. The trial court imposed concurrent thirty-year sentences for Counts III and IV, and a twenty-year sentence for Count V, to run consecutive to those for Counts III and IV. This appeal followed.

Robinson asserts three claims on appeal. First, he contends the trial court erred in compelling Robinson to make a statement in open court when Robinson did not testi-

fy. The State contends there was no error because a defendant's privilege against self-incrimination is not violated by the trial court requiring him to speak—for voice identification purposes—in the presence of a jury. In his second point, Robinson argues the trial court erred in allowing into evidence that Robinson purchased orange ski masks and gloves from Walmart, and his altercation with customers there. The State contends this point should be reviewed for plain error only, because it was not preserved. In his third point, Robinson argues the trial court erred in allowing Detective Blakely to testify as to hearsay statements of Hudson and Larry regarding the actions of Robinson. The State argues this point is not preserved and also should be reviewed for plain error.

The issues presented for our determination are:

1. Whether the trial court abused its discretion in requiring Robinson to repeat a phrase in front of the jury;

2. Whether the trial court plainly erred in allowing evidence that Robinson purchased orange ski masks and gloves from Walmart and was involved in an altercation as he was leaving Walmart; and

3. Whether the trial court plainly erred in permitting Detective Blakely to testify about statements made to him.

## *Point I: No Abuse of Discretion in Requiring Robinson to Repeat Phrase*

### Standard of Review

 "A trial court has broad discretion to admit or exclude evidence at trial. This standard of review compels the reversal of a trial court's ruling on the admission of evidence only if the court has clearly abused its discretion." *State v. Madorie*, 156 S.W.3d 351, 355 (Mo. banc 2005).[6] " '[D]iscretion is abused when a ruling is clearly against the logic of the circumstances and is so unreasonable as to indicate a lack of careful consideration.' " *State v. Forrest*, 183 S.W.3d 218, 223 (Mo. banc 2006) (quoting *State v. Gonzales*, 153 S.W.3d 311, 312 (Mo. banc 2005)). On direct appeal, we review "for prejudice, not mere error, and will reverse only if the error was so prejudicial that it deprived the defendant of a fair trial." *Id.* at 223–24 (internal quotation and citation omitted). "Trial court error is not prejudicial unless there is a reasonable probability that the trial court's error affected the outcome of the trial." *Id.* at 224.

### Analysis

 It is well settled that requiring a defendant to speak for identification purposes does not come within the privilege against self-incrimination. *United States v. Wade*, 388 U.S. 218, 223, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967). "Nor is [a defendant's] privilege against self-incrimination

**6.** To properly preserve a matter for appellate review, the trial objection " 'must be specific, and the point raised on appeal must be based upon the same theory' presented at trial." *State v. Boydston*, 198 S.W.3d 671, 674 (Mo. App. S.D.2006) (quoting *State v. Brethold*, 149 S.W.3d 906, 909 (Mo.App. E.D.2004)). At trial, Robinson objected to repeating the phrase because: (1) it violated his Fifth Amendment rights, and (2) was prejudicial because he was already identified. In his

"Motion for New Trial," Robinson alleged he was entitled to a new trial because the trial court erred in requiring him to make the statement because it was "prejudicial, unfair, and a denial of due process." Robinson's trial objection, Motion for New Trial, and appellate brief together are sufficient to preserve the alleged error for appellate review for abuse of discretion. *See State v. Scott*, 278 S.W.3d 208, 212 (Mo.App. W.D.2009).

violated by an order of the trial court requiring him to speak, for voice identification purposes, in the presence of the jury." *State v. Mitchell,* 755 S.W.2d 603, 609 (Mo. App. E.D.1988).[7]

The case law is clear that a trial court may require a defendant to make statements for voice identification purposes. For example, in *Mitchell,* the State asked defendant to make several statements similar to those made during a robbery committed by someone wearing a ski mask. *Id.* at 608. After defendant made the statements, the witness testified that he recognized the voice as belonging to the person who robbed him. *Id.* The defendant argued the trial court erred in requiring him to speak to the jury because his constitutional privilege against self-incrimination was violated. *Id.* 608–09. The court concluded "[t]he trial court did not err in requiring the defendant to utter the words used by the perpetrator, for it allowed the jury to determine itself if the defendant had a distinctive voice, as testified [by the witness]. Further, it allowed [the witness] to make an in-court identification of the voice." *Id.* at 609.

Here, similarly, statements were made during the robbery by an individual wearing a ski mask. Dewayne testified that when the individuals first came to the Washington residence, he could not tell who they were because they had masks covering their faces. Later, he recognized Robinson's voice when they started talking because Robinson has a "raspy voice" and had a "southern kind of accent." The trial court requested Robinson make a statement that was made to witness Dewayne for voice identification purposes.[8] After Robinson made the statement in front of the jury, Dewayne recognized Robinson's voice as the voice of the person who robbed him. Not only did the statement allow Dewayne to identify Robinson, the statement allowed the jury to determine itself if Robinson had a "raspy voice" and a "southern accent" as testified to by Dewayne.

■ Based on *Mitchell,* we reject Robinson's argument that this violated his Fifth Amendment right. The phrase was not admitted as testimony, but rather allowed Dewayne to make an in-court identification of the voice he heard during the robbery. Robinson repeatedly labels his statement made to the jury as cumulative "testimony." By doing so, Robinson completely overlooks the reason the trial court required him to make the statement to the jury—for voice identification purposes. Immediately after Robinson made the statement, the State continued direct examination of Dewayne:

[State:] [Dewayne], is that what you heard that night?

[Dewayne:] Yep.... Yeah, that is it.

■ Robinson primarily argues that his statement was cumulative and prejudicial because Dewayne had "prior dealings" with Robinson without citation to any authority in support of his argument. "An appellant must support his arguments with relevant authority or explain why such authority is not available." *Johnson v. State,* 103 S.W.3d 182, 187 (Mo.App. W.D.2003). Robinson has not cited any authority in support of his argument.

■ The fact that a witness may know the defendant does not make the

---

**7.** The State presented the case of *State v. Mitchell,* 755 S.W.2d 603, 609 (Mo.App. E.D. 1988) to the trial court in support of the State's request.

**8.** The trial court specifically noted that the State's request was for voice identification of Robinson.

statement cumulative when done for identification. This is evident in *Mitchell,* where the witness recognized the defendant based on the defendant's "distinctive voice, which he remembered from elementary school, junior high school, and from other contacts since school." *Id.* at 605. Here, the fact that Dewayne had prior dealings with Robinson did not make the evidence cumulative. At the time of the robbery, Robinson had on a ski mask and gloves so his face was not visible, making it impossible for Dewayne to identify him visually.

 The record reveals that the trial court carefully considered the State's request, Robinson's objections, and the case law presented to the trial court. We find the trial court did not abuse its discretion in requiring Robinson to repeat a phrase to the jury for voice identification purposes. Accordingly, Robinson's Point I is denied.

### Point II: No Plain Error in Admitting Evidence that Robinson Purchased Orange Ski Masks and Gloves at Walmart and Had an Altercation With Customer Upon Leaving Walmart

Next, Robinson contends the trial court erred in allowing evidence that Robinson purchased orange ski masks and gloves from Walmart, and testimony from Strobel that Robinson was involved in an altercation as he was leaving Walmart because it was evidence of a prior bad act or uncharged crime and it did not fit within any exception to the prohibition against introducing evidence of uncharged crimes. Robinson further argues that its prejudicial effect substantially outweighs any possible probative value, and his "rights were violated." The State contends: (1) the evidence was logically relevant because it made it more likely that Robinson was involved in and planned the robbery; (2) the evidence was not so prejudicial that its probative value was outweighed; and (3) the evidence was part of the circumstances and sequence of events surrounding the robbery.

### Standard of Review

 Robinson did not properly preserve this evidentiary question for appellate review because he did not object to the admission of this evidence.[9] *See State v. Morgan,* 366 S.W.3d 565, 581 (Mo.App. E.D.2012) (holding to "preserve an evidentiary question for appellate review, a party must object at the first opportunity."). Therefore, review is only available for plain error under Rule 30.20.[10] Rule 30.20 permits plain-error review if we find that the action or inaction at issue resulted in manifest injustice or a miscarriage of justice. *State v. White,* 291 S.W.3d 354, 358 (Mo.App. S.D.2009).

 Plain-error review is discretionary and involves a two-step analysis. *State v. Jennings,* 322 S.W.3d 598, 601 (Mo.App. S.D.2010). First, this Court considers the facts and circumstances to facially determine if there was plain error, which is error that is "evident, obvious,

---

9. Robinson claims that his Motion for New Trial alleges the purchase of the ski masks and gloves was "more prejudicial than probative." This is not entirely accurate, as his Motion for New Trial merely argues error because the State introduced evidence of "clothing and material which were prejudicial and unrelated to said cause of action such as 'Dickey's Sports Clothing.'" Robinson

notes evidentiary rulings by the trial court are reviewed under an abuse-of-discretion standard, but requests "plain error" review if this Court determines the issue was not properly preserved for appellate review.

10. All rule references are to Missouri Court Rules (2012).

and clear" error. *Id.* (internal citation omitted). Only if this Court identifies plain error do we proceed to the second step of determining whether manifest injustice or a miscarriage of justice, resulted. *Id.* Robinson has the burden to establish the trial court committed plain error, and that there has been a manifest injustice or miscarriage of justice. *State v. Royer,* 322 S.W.3d 603, 606 (Mo.App. S.D.2010).

## Analysis

We cannot say the admission of this evidence was evident, obvious and clear error. The general rule is that evidence of uncharged crimes, wrongs, acts, or prior misconduct is not admissible at trial unless such evidence has a legitimate tendency to directly establish the defendant's guilt of the charge for which he is on trial. *State v. Vorhees,* 248 S.W.3d 585, 587 (Mo. banc 2008). However, there are exceptions to this general rule, and such evidence may be logically and legally relevant and, therefore, admissible if it tends to establish motive, intent, the absence of mistake or accident, a common plan or scheme, or the identity of the person charged with the commission of the crime on trial. *Id.* at 588; *State v. Bernard,* 849 S.W.2d 10, 13 (Mo. banc 1993). In addition, "[e]vidence of uncharged crimes that are part of the circumstances or the sequence of events surrounding the offense charged may be admissible 'to present a complete and coherent picture of the events that transpired.'" *State v. Primm,* 347 S.W.3d 66, 70 (Mo. banc 2011) (quoting *State v. Thurman,* 272 S.W.3d 489, 495 (Mo.App. E.D.2008)).

"The list of exceptions to the general rule is not exclusive but, in each instance, announce a judicial conclusion that the prior-bad-acts evidence is both logically and legally relevant." *State v. Roberts,* 948 S.W.2d 577, 591 (Mo. banc 1997). "Evidence is logically relevant if it tends to establish defendant's guilt; it is legally relevant when 'its probative value outweighs its prejudicial effect.'" *State v. Smith,* 292 S.W.3d 595, 599 (Mo.App. S.D. 2009) (quoting *State v. Barriner,* 34 S.W.3d 139, 144–45 (Mo. banc 2000)).

Here, we find the trial court did not plainly err in admitting evidence that Robinson purchased ski masks and gloves from Walmart and was involved in an altercation as he was leaving Walmart. This evidence meets an exception to the general rule, and is admissible to present a complete and coherent picture of the crimes charged. Numerous witnesses testified that Robinson purchased ski masks and gloves from Walmart immediately before the robbery. After leaving Walmart, the group parked about a mile from the crime scene, finalized plans to rob the residence, and then went in the house.[11] Then the group, including Robinson, went inside the residence, all wearing orange ski masks. Clearly, Robinson's Walmart purchase was interconnected to, and nearly contemporaneous, with the robbery. In addition, the evidence was logically relevant because it tended to establish that Robinson planned and was involved in the robbery.

Strobel's testimony also provided a complete and coherent picture of the events leading up to the robbery. Strobel testified he saw Robinson purchasing the masks and gloves at Walmart and that he

11. There is no indication in the record of a time lapse between the purchase of the masks and the robbery, as suggested by Robinson. The only evidence is the group went straight from Walmart to the crime scene. *See State v. Morrow,* 968 S.W.2d 100, 107 (Mo. banc 1998) (finding evidence of uncharged crimes admissible when the time between uncharged crimes and the charged crime was "less than thirteen hours.").

and his friends were threatened by Robinson as they were walking out of the store on the night of the robbery. Strobel's testimony was logically relevant to show that Robinson purchased masks that were later used in the robbery, and to show why Strobel specifically remembered Robinson and the items he purchased from Walmart.

■ The evidence of the purchase and altercation at Walmart is also legally relevant. As previously noted, "[e]vidence is ... legally relevant [if] 'its probative value outweighs its prejudicial effect.'" *Smith*, 292 S.W.3d at 599 (quoting *Barriner*, 34 S.W.3d at 144–45). "'The balancing of the effect and value of the evidence rests within the sound discretion of the trial court.'" *Id.* (quoting *Bernard*, 849 S.W.2d at 13). Generally, in determining legal relevancy of uncharged-crime evidence, prejudice is determined by whether the evidence would cause a jury to convict because the defendant had engaged in prior bad acts or crimes. *State v. Williams*, 976 S.W.2d 1, 4 (Mo.App. W.D.1998).

The fact that Robinson purchased ski masks and was involved in an altercation at Walmart alone would not cause a reasonable jury to convict Robinson of first-degree robbery, armed criminal action, and first-degree burglary. Rather, the jury could make a reasonable inference from Robinson's purchase of ski masks and gloves that he intended to commit the crimes of which he was convicted. Robinson argues the admission of the evidence was prejudicial because he was put in a position of defending a charge that was not before the court. This argument is unpersuasive. The evidence that Robinson purchased masks and gloves serves to corroborate the testimony that Robinson planned and was involved in the robbery. Any "prejudice" to Robinson here is attributable to the probative nature of the evidence. Robinson "is not entitled to exclude evidence, merely because it damages his case." *State v. Johnson*, 201 S.W.3d 551, 556 (Mo.App. S.D.2006) (internal quotation and citation omitted).

■ We find the trial court did not plainly err in allowing the admission of evidence that Robinson purchased orange ski masks and gloves from Walmart and was involved in an altercation as he was leaving Walmart. Accordingly, Robinson's Point II is denied.

### Point III: No Plain Error Admission of Detective Blakely's Testimony

Robinson's final point alleges error in allowing Detective Blakely to testify as to the hearsay statements of co-defendants Hudson and Larry. Robinson notes in the "Facts" portion of his brief that both Larry and Hudson testified against Robinson, and that Detective Blakely testified as to their statements *without* objection by Robinson's counsel. The State argues that this claim is not preserved for review and, furthermore, is not reviewable because Robinson does not point to any specific hearsay statements.

#### Standard of Review

■ Because Robinson did not object to Detective Blakely's testimony as to the alleged hearsay statements, his claim of error in Point III is not properly preserved for review on appeal. *See State v. Jordan*, 751 S.W.2d 68, 75 (Mo.App. E.D. 1988). As such, review is available only for plain error, pursuant to Rule 30.20. This standard of review is recounted in Point II above. Robinson has the burden to establish the trial court committed plain error, and that there has been a manifest injustice or miscarriage of justice. *Royer*, 322 S.W.3d at 606.

#### Analysis

■ Robinson fails to meet his burden to prove plain error. Without pointing

this Court to the specific testimony which Robinson claims was erroneously admitted, this Court cannot even begin to determine if the trial court committed plain error as Robinson alleges. Robinson asserts, without adequate Rule 84.04(i) transcript references, that the alleged statements were not in furtherance of a conspiracy, were self-serving, and prejudicial. At no point does Robinson direct this Court to the specific testimony of Detective Blakely that he alleges was admitted in error. Detective Blakely's testimony comprises 104 transcript pages. We decline to review Robinson's conclusory assertions of error to over 100 pages of transcript testimony because it would be inappropriate for this Court to advocate on Robinson's behalf by speculating on the exact portion of Detective Blakely's testimony he claims is erroneous and fill in the gaps in Robinson's claim of error. *See Boyd v. Boyd,* 134 S.W.3d 820, 823–24 (Mo.App. W.D.2004); *State v. Gaines,* 342 S.W.3d 390, 397 n. 5 (Mo.App. W.D.2011).

Even if Robinson did point to specific testimony, he does not get past step one of the plain-error analysis. Robinson acknowledges in his brief that Detective Blakely testified to statements of Hudson and Larry "[w]ithout objection by defense counsel." "Hearsay admitted without objection is not plain error." *Jennings,* 322 S.W.3d at 601–02 (internal citations omitted). We find the trial court did not plainly err in permitting Detective Blakey to testify about statements made to him. Robinson's Point III is denied.

The judgment of the trial court is affirmed.

GARY W. LYNCH, P.J., and NANCY STEFFEN RAHMEYER, J., concur.