

# Missouri Court of Appeals

### Southern District

### Division One

STATE OF MISSOURI,        )
                                  )
        Plaintiff-Respondent,    )
                                  )     No. SD33621
vs.                           )
                                  )     **Filed: February 17, 2016**
FELIX MCGRUNDY SEALS,    )
                                  )
        Defendant-Appellant.    )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

### Honorable Calvin R. Holden

### <u>AFFIRMED IN PART AND REVERSED AND REMANDED IN PART</u>

Felix McGrundy Seals ("Defendant") appeals from three convictions of second-degree domestic assault, third-degree domestic assault, and attempted victim tampering. *See* §§ 565.073, 565.074, 575.270.[1] Defendant claims (1) the trial court abused its discretion in admitting evidence of an uncharged assault on Victim[2] and (2) the trial court plainly erred in failing to instruct the jury regarding self-defense for the charge of second-degree domestic assault.

---

[1] Unless otherwise indicated, all statutory references are to RSMo Cum. Supp. (2013).

[2] Pursuant to Section 566.226 and to protect Victim, Victim will not be referred to by name in this opinion.

Defendant's first point is without merit, but we agree with Defendant's second point. Defendant's conviction for second-degree domestic assault is reversed, but in all other respects, the trial court's judgment is affirmed.

**Factual and Procedural Background**

Defendant and Victim were in a relationship. On February 6, 2013, Springfield Police Officer Craig Harter ("Officer Harter") responded to a disturbance in Springfield, Missouri. Victim's right knee was bleeding, and Victim had red marks on the side of her face and on her right arm. Victim "was upset, scared, excited, [and] kind of shaken-up acting." Victim told Officer Harter Defendant "drug her down a flight of stairs and hit her in the face."

On March 13, 2013, Christopher Roberts ("Mr. Roberts") was working at a hotel in Springfield, Missouri. Sometime between 5 and 5:30 in the morning, Mr. Roberts received a call from a guest complaining about loud noises coming from another room. Mr. Roberts investigated, and heard a woman inside the room scream. Mr. Roberts knocked on the door and heard "a voice saying 'be quiet[.]'" Defendant answered the door. Mr. Roberts identified himself. Defendant immediately told Mr. Roberts not to call the police. In the corner of the room, Mr. Roberts could see a scantily clad woman who looked "as if she was terrified." Mr. Roberts separated the two, and Victim followed Mr. Roberts back to the front desk where he called 911.

Springfield Police Officer Anthony Gomez ("Officer Gomez") arrived and spoke with Mr. Roberts and Victim. Victim had an abrasion on her right knee and red marks around her neck. Victim explained Defendant had come to her hotel room to retrieve some of his belongings, and he became angry when she

2

asked him to leave.  Defendant accused Victim of cheating on him and choked her until she lost consciousness.  When she regained consciousness, Defendant choked her again.

Based on those two incidents, Defendant was charged with second-degree domestic assault and third-degree domestic assault.  While Defendant was in jail awaiting trial, Defendant and Victim spoke on numerous occasions.  During those conversations, Defendant told Victim "to fill out an affidavit saying that he didn't do anything to [her]."  Thereafter, the prosecutor amended the charging document to include a charge of attempted victim tampering.

Defendant had a two-day jury trial in August, 2014.  The police officers testified as did Victim.  Victim's trial testimony was favorable to Defendant and contradicted what she had told the police.  She explained that on February 6, 2013, she had fallen down the stairs.  She testified that on March 13, 2013, she had attacked Defendant.  Finally, she testified Defendant only told her to fill out the affidavit after she asked what she could do to get him out of jail.  The prosecutor introduced evidence of three Facebook posts Victim created while the criminal case was pending which included pictures of Victim with a black eye and containing captions indicating Defendant caused the injury.

The jury found Defendant guilty as charged.  This appeal followed.

### Point I:  Facebook Posts

In his first point on appeal, Defendant argues the trial court abused its discretion in admitting the evidence regarding the Facebook posts because that evidence "was presented only to imply to the jury that if [Defendant] was the

3

person who caused [Victim's] black eye, he must have also been guilty of assaulting her on the charged dates[.]" We disagree.

"The admission of evidence is reviewed for abuse of discretion and disturbed only when the decision is clearly against the logic of the circumstances."[3] *State v. Miller*, 372 S.W.3d 455, 473 (Mo. banc 2012) (quoting *State v. Taylor*, 298 S.W.3d 482, 491 (Mo. banc 2009)). Appellate review of the trial court's decisions in such matters is "for prejudice and not mere error, and" the appellate court will not reverse the conviction unless the error "was so prejudicial that it deprived the defendant of a fair trial." *State v. Austin*, 411 S.W.3d 284, 293 (Mo. App. E.D. 2013) (quoting *State v. Hadley*, 357 S.W.3d 267, 269-70 (Mo. App. E.D. 2012)).

"[A] criminal defendant has a right to be tried only for the offense for which he is charged." *State v. Taylor*, 166 S.W.3d 599, 605 (Mo. App. S.D. 2005). "[E]vidence of prior uncharged misconduct is not admissible for the purpose of showing the propensity of the defendant to commit such crimes." *Id.* (quoting *State v. Burns*, 978 S.W.2d 759, 761 (Mo. banc 1998)). "However, there are many exceptions to the general rule." *Id.* "[S]uch evidence may be

---

[3] The State argues this claim is not preserved for appellate review because the objection raised below was not the same as the argument raised on appeal. It is true that "[t]o preserve an objection to evidence for appellate review, the objection must be specific, and the point raised on appeal must be based upon the same theory presented at trial." *State v. Martinez*, 407 S.W.3d 669, 674 (Mo. App. S.D. 2013). Here, however, the objection was sufficiently specific to alert the trial court to the arguments Defendant asserts on appeal. During the bench conference regarding Defendant's objection to this evidence, Defendant's attorney argued the evidence was not relevant because the injury was not the one for which Defendant was presently on trial and specifically stated the evidence showed "uncharged behavior[.]" The claim was also mentioned in the motion for new trial. To require more specificity in the motion for new trial as the State's argument suggests would be to place form over substance. Although the better practice might be to use more specificity in the motion for new trial, the statements made by Defendant's attorney were sufficient to alert the trial court to the nature of the claim and to give the trial court the opportunity to rule on that issue, so the purposes of the rule requiring an objection at trial in order to preserve a claim for appellate review were met.

logically and legally relevant and, therefore, admissible if it tends to establish motive, intent, the absence of mistake or accident, a common plan or scheme, or the identity of the person charged with the commission of the crime on trial." *State v. Robinson*, 392 S.W.3d 545, 554 (Mo. App. S.D. 2013). Moreover, "[t]he list of exceptions to the general rule is not exclusive but, in each instance, announce a judicial conclusion that the prior-bad-acts evidence is both logically and legally relevant." *Id.* (quoting *State v. Roberts*, 948 S.W.2d 577, 591 (Mo. banc 1997)).

"As a general proposition, the credibility of witnesses is always a relevant issue in a lawsuit[,]" *State v. Abbott*, 412 S.W.3d 923, 929 (Mo. App. S.D. 2013) (quoting *State v. Smith*, 996 S.W.2d 518, 521 (Mo. App. W.D. 1999)), and evidence of a defendant's prior bad acts may help shed light on a victim's credibility. For example, one instance in which prior-bad-acts evidence has been held to be otherwise relevant is where the evidence explains a victim's behavior in reporting an offense. In *Miller*, the Supreme Court of Missouri held evidence that the defendant had physically abused the victim was admissible to explain why the victim did not report the defendant's crimes immediately after they occurred. *Miller*, 372 S.W.3d at 474.

Here, the Facebook posts were relevant to explain why Victim changed her testimony at trial. Victim initially told police Defendant caused her injuries, while at trial, she provided contrary testimony. During closing argument, the prosecutor reminded the jury the prosecution knew that Victim was going to recant the account she had given the officers. Then he discussed her statements to the police and explained the only time she told the truth was during the brief

moments when she was outside of Defendant's control in the safety of the police officers. These arguments show the prosecutor was attempting to use Victim's statements to the police officers as substantive evidence of Defendant's guilt, as was permitted under Section 491.074. For that to be a successful trial strategy, however, the prosecutor had to convince the jury Victim's statements to the police were credible and her statements at trial were not. The Facebook posts provided the key to that argument. The Facebook posts provided evidence supporting a reason Victim would fabricate her testimony at trial. One post had a picture of Victim in which Victim was lifting her sunglasses to reveal a red mark and bruise under her left eye. The caption posted with that picture stated, "Wu punched me in my eye rite b 4 court!!!"[4] The other posts had pictures showing the bruise from other angles. The Facebook posts were relevant and admissible to show Victim testified as she did because she was afraid of Defendant.

Defendant's first point is denied.

## Point II:  Self-Defense Instruction

In his second point, Defendant argues the trial court plainly erred in failing to submit a self-defense instruction with the second-degree domestic assault charge because Victim's testimony provided substantial evidence to support a self-defense instruction regarding the March 13 incident. We agree.

As Defendant concedes, this claim was not preserved for appellate review because Defendant requested no self-defense instruction. *See **State v. Blackman***, 875 S.W.2d 122, 132 (Mo. App. E.D. 1994). However, "even if a

---

[4] The captions refer to a person named "Wu," and Victim testified "Wu" is Defendant's nickname.

defendant does not request 'the instruction at trial, if "substantial evidence" is presented to support the giving of an instruction on self-defense, it is error to fail to give the instruction.'" ***State v. Kasparie***, No. SD33590, 2015 WL 6951727, at *5 (Mo. App. S.D. November 10, 2015) (quoting ***State v. Hiltibidal***, 292 S.W.3d 488, 493 (Mo. App. W.D. 2009)). When reviewing a claim that the trial court erred in failing to submit a self-defense instruction, this Court will view the evidence "in the light most favorable to the defendant." ***State v. Smith***, 456 S.W.3d 849, 852 (Mo. banc 2015). "If the evidence supports different conclusions as to whether the defendant acted in self-defense, he or she is entitled to an instruction on it." ***Stiers v. State***, 229 S.W.3d 257, 262 (Mo. App. W.D. 2007).

Given this standard of review, it is necessary to review Victim's trial testimony in some detail. When discussing the March 2013 incident, Victim testified she had been drinking and was very mad at Defendant. She testified she had accused Defendant of cheating on her and then attacked him. Victim screamed at Defendant and threw objects at him. After she attacked him, Defendant "tried to hold [her] arms back[.]" She had no recollection of what she had told the police. This testimony was substantial evidence supporting a self-defense instruction.

Missouri statutes provide:

A person may . . . use physical force upon another person when and to the extent he or she reasonably believes such force to be necessary to defend himself or herself or a third person from what he or she reasonably believes to be the use or imminent use of unlawful force by such other person[.]

7

§ 563.031.1. "Self[-]defense requires . . . a real, specific, actual and immediate threat of bodily violence to which the defendant's actions are an appropriate and proportional response." *State v. Miller*, 91 S.W.3d 630, 635 (Mo. App. W.D. 2002) (quoting *State v. Harris*, 870 S.W.2d 798, 809-10 (Mo. banc 1994)). To be entitled to an instruction regarding self-defense, there must be substantial evidence showing (1) the defendant was not the initial aggressor; (2) the defendant "reasonably believed that he was faced with the necessity of defending himself from bodily harm"; (3) the defendant "used no more force than was necessary"; and (4) the defendant "attempted to avoid the confrontation." *Id.* (quoting *State v. Delgado*, 774 S.W.2d 549, 552 (Mo. App. S.D. 1989)).

The State argues Defendant was not entitled to an instruction on self-defense because even if Victim instigated the attack, Defendant responded by using deadly force. However, "[W]hether deadly force was used depends not only on the amount of force used but also on the defendant's purpose to cause, or awareness of the likelihood of causing, death or serious physical injury." *State v. Westfall*, 75 S.W.3d 278, 282 (Mo. banc 2002) (quoting § 563.011, RSMo (1994)) (quoting MAI-CR3d 306.06, Notes on Use 5(b)). The issue of deadly force is a factual one which should be decided by a properly instructed jury. *Id.* at 281-83. The jury should have been permitted to consider whether Defendant acted in self-defense.

The State also relies on *Kasparie* for the proposition that "the jury's ability to believe parts of the evidence and disbelieve other parts does not constitute substantial evidence of self-defense." This argument is unavailing because the evidence in *Kasparie* differed from the evidence here. In

8

*Kasparie*, there was no evidence the victim was the initial aggressor. Instead, the evidence simply showed both the victim and the defendant received injuries in the altercation and the victim stated she hit the defendant to defend herself. *Kasparie*, 2015 WL 6951727, at *7. Here, in contrast, there was affirmative evidence from Victim that she initiated the attack. So here the self-defense argument would not have been based on simply the jury's decision not to believe some of the testimony but instead on Victim's affirmative assertion that she attacked Defendant.

There was substantial evidence to support a self-defense instruction. Defendant's second point is granted.

## Decision

Defendant's conviction for second-degree domestic assault is reversed, and the case is remanded for further proceedings regarding that charge. In all other respects, the trial court's judgment is affirmed.

MARY W. SHEFFIELD, C.J. – OPINION AUTHOR

DANIEL E. SCOTT, P.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS