

# Missouri Court of Appeals
## Southern District

In Division

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | No. SD38459 |
| | ) | |
| v. | ) | **Filed: March 17, 2025** |
| | ) | |
| RICHARD NEIL BURKETT, | ) | |
| | ) | |
| Appellant. | ) | |

APPEAL FROM THE CIRCUIT COURT OF TEXAS COUNTY

Honorable William E. Hickle, Judge

**<u>VACATED AND REMANDED FOR NEW TRIAL</u>**

Richard Neil Burkett appeals his convictions of assault in the first degree and armed criminal action, following a jury trial. In two points, Burkett argues the trial court plainly erred in: (1) failing to give a self-defense instruction even though defense counsel did not request such an instruction; and (2) failing to intervene and give a curative instruction after the State argued in closing arguments "that [the first-degree assault instruction] did not require the State to prove [Burkett's] intent." Because there was substantial evidence to inject the issue of self-defense into the case, we agree with Burkett that the self-defense instruction should have been given and that the failure to

give such an instruction resulted in a manifest injustice. Point 1 is granted and is dispositive of this appeal.

## Standard of Review and Applicable Law

Burkett acknowledges his points are not preserved for our review. Generally, we do not review unpreserved claims of error. *State v. Brandolese*, 601 S.W.3d 519, 525 (Mo. banc 2020). Rule 30.20 creates an exception and gives us discretion to review "plain errors affecting substantial rights . . . when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." *Brandolese*, 601 S.W.3d at 526 (quoting Rule 30.20).[1] Plain-error review is a two-step process. *State v. Mills*, 687 S.W.3d 668, 675 (Mo. banc 2024). The first step requires us to determine if the claim of error "facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted." *Id.* (quoting *State v. Minor*, 648 S.W.3d 721, 731 (Mo. banc 2022)). "[T]he failure to instruct upon a defense supported by the evidence is plain error affecting substantial rights." *State v. Jones*, 686 S.W.3d 293, 304 (Mo. App. E.D. 2024) (quoting *State v. Westfall*, 75 S.W.3d 278, 281 (Mo. banc 2002)). If plain error is found, we then proceed to the second step and determine whether the claimed error resulted in manifest injustice or a miscarriage of justice. *Id.* at 301.

"Instructing a jury on claims of self-defense is a well-recognized right of persons charged with violent criminal conduct." *State v. Clement*, 661 S.W.3d 396, 403 (Mo. App. E.D. 2023). Even if a defendant does not request a self-defense instruction, the trial court must instruct the jury on self-defense if there is substantial evidence to support it.

---

[1] All rule references are to Missouri Court Rules (2024).

*Westfall*, 75 S.W.3d at 281 n.9; *see also* Missouri Approved Instructions-Criminal 4th 406.06 n.3 ("Whenever there is evidence supporting this defense, this instruction *must* be given.") (emphasis added). In fact, if there is substantial evidence of a justification defense, the trial court must give the instruction even if the defense objects to the instruction and it is inconsistent with the defendant's defense. *State v. Endicott*, 600 S.W.3d 818, 828 (Mo. App. E.D. 2020). "Substantial evidence" means evidence putting the matter in issue. *State v. Whipple*, 501 S.W.3d 507, 513 (Mo. App. E.D. 2016). In determining if there was substantial evidence supporting a justification instruction, we consider the evidence in the light most favorable to the defendant. *State v. Weems*, 840 S.W.2d 222, 228 (Mo. banc 1992). "Substantial evidence is 'any theory of innocence . . . however improbable that theory may seem, so long as the most favorable construction of the evidence supports it.'" *State v. Barnett*, 577 S.W.3d 124, 128 (Mo. banc 2019) (quoting *State v. Kinard*, 245 S.W.2d 890, 893 (Mo. 1952)). "If the evidence tends to establish the defendant's theory, or supports differing conclusions, the defendant is entitled to an instruction on it." *State v. Bruner*, 541 S.W.3d 529, 535 (Mo. banc 2018) (quoting *Westfall*, 75 S.W.3d at 280). "[S]ubstantial evidence of self-defense requiring instruction may come from the defendant's testimony alone as long as the testimony contains some evidence tending to show that he acted in self-defense." *Id.*

## Background

This case arises out of an altercation between Burkett and his brother-in-law ("Victim") at a convenience store where Burkett pointed a gun at Victim's head and pulled the trigger. The case proceeded to jury trial, where the following evidence was adduced.

3

*Victim's Testimony*

According to Victim, Victim saw Burkett, his brother-in-law, at a convenience store and confronted him about having brandished a weapon at members of the local Amish community. At that time, Burkett was living in a guesthouse on Victim's property. Victim told Burkett he would need to move out of the guesthouse. Burkett then accused Victim of "saying something rude about his girlfriend" and "tried to headbutt" Victim. Victim and Burkett started wrestling, but were separated by two young men. After they were separated, Burkett pulled out a semi-automatic handgun, pointed it at Victim's head, said "[y]ou're a dead mother fucker[,]" and pulled the trigger. The gun clicked but did not fire. Burkett tried to unjam the gun. Victim testified that the owner of the convenience store ("Storeowner") pulled out a shotgun and ordered Burkett to leave.

*Storeowner's Testimony*

Storeowner testified that he was at the store the day of incident, that Burkett struck Victim first, that Burkett pulled out a gun, pointed it at Victim's head, and pulled the trigger. The gun clicked but did not fire. According to Storeowner, Burkett manipulated the gun like "he was trying to unjam it," and a "shell" fell on the floor. Storeowner explained he then pulled out his own shotgun and ordered Burkett to leave.

*Bystander's Testimony*

A bystander who witnessed the incident also testified. According to bystander, Burkett and Victim got into "a little fisticuff." Afterward, "all of a sudden, out of nowhere, [Burkett] pull[ed] a gun and put[] it at [Victim's] temple." Burkett pulled the trigger. The gun clicked but did not discharge. Storeowner pulled out a shotgun and ordered Burkett to leave.

*Burkett's Trial Testimony*

At trial, Burkett provided a different account of events than Victim, Storeowner, and Bystander, and claimed Victim pointed a shotgun at him. Burkett testified that he pulled out his gun after Storeowner handed Victim a shotgun and said, "here, shoot him[.]" According to Burkett, it was only after Victim aimed the shotgun at him that Burkett pointed his gun at Victim. Burkett testified he was scared for his life and felt like he was being attacked and threatened. He denied striking Victim first and claimed he "pulled [the gun] on self-defense." Burkett further claimed the gun was unloaded, that he did not have any ammunition to load it, and denied pointing the gun at Victim's head or pulling the trigger. When asked why he changed his story to police, Burkett said he did so because the officer told him there was video evidence.[2] Burkett said he fled the county because he had outstanding warrants.

The State submitted a verdict director for assault in the first degree, but no instruction was given as to self-defense. Defense counsel did not object to the instructions submitted by the State and offered no additional instructions.

The jury found Burkett guilty of assault in the first degree and armed criminal action.

---

2 An officer who interviewed Burkett prior to trial also testified at trial. According to the officer, during the interview, Burkett changed his story multiple times. Burkett initially claimed Victim took Storeowner's shotgun and pointed it at Burkett. After the investigating officer said he did not believe Burkett's story, Burkett stated Victim never had the shotgun but Burkett drew his gun because he thought Victim was going to get Storeowner's gun. The officer again told Burkett he did not believe Burkett's story and that the store had cameras. Burkett admitted he struck Victim first and then Victim grabbed him by the throat. Burkett also admitted he pulled a gun and pointed it at Victim, but denied pulling the trigger because it was unloaded. Burkett said he tried to load the gun after Storeowner pulled out his shotgun. Burkett claimed he only wanted to scare Victim.

## Analysis

Burkett claims the trial court plainly erred in failing to *sua sponte* give a self-defense instruction to the jury.[3]  "If the defendant injects self-defense into the case and there is substantial evidence to support a self-defense instruction, it is reversible error for the trial court to fail to submit a self-defense instruction to the jury under plain error review."  ***State v. Bolden***, 371 S.W.3d 802, 805 (Mo. banc 2012).

The ability to assert self-defense as a justification to a violent offense is found in section 563.031 which authorizes a person to:

> use physical force upon another person when and to the extent he or she
> reasonably believes such force to be necessary to defend himself or herself
> or a third person from what he or she reasonably believes to be the use or
> imminent use of unlawful force by such other person[.]

§ 563.031.1, RSMo (2016).  Self-defense requires "a real, specific, actual and immediate threat of bodily violence to which the defendant's actions are an appropriate and proportional response."  ***State v. Seals***, 487 S.W.3d 18, 23 (Mo. App. S.D. 2016) (internal citation omitted).  "To justify the use of deadly force, '[s]ome affirmative action, gesture, or communication by the person feared indicating the immediacy of danger, the inability

---

[3] The State argues Burkett's point fails because he invited error and thus waived his plain error claim by not objecting to the State's jury instructions and because the failure to request the instruction was trial strategy. These arguments are unpersuasive.  While it is true that, in certain contexts, counsel's statement of "no objection" waives plain-error review, it does not waive claims related to instructional error.  *See State v. Celis-Garcia*, 344 S.W.3d 150,154 n.3 (Mo. banc 2011).  Nor is this a case where Burkett's counsel actively collaborated in drafting the instruction he now asserts was erroneous.  *See State v. Clay*, 533 S.W.3d 710, 714 (Mo. banc 2017) ("A defendant invites error and waives appellate review of a claim of instructional error when the defendant jointly proffers an erroneous instruction.").  "Unless and until the Supreme Court re-evaluates the availability of plain error review of jury instructions in a criminal case, particularly where the defendant has affirmatively expressed no objection to the instructions[,] . . . we are without authority to conclude that plain error review has been waived."  *Jones*, 686 S.W.3d at 302 (quoting *State v. Coyle*, 671 S.W.3d 702, 712 (Mo. App. W.D. 2023)).  Finally, "a trial court does not commit plain error for failing to take action *when the record clearly indicates* that the defendant's counsel strategically allowed that action."  *State v. Beerbower*, 619 S.W.3d 117, 126 (Mo. App. S.D. 2020) (quoting *State v Snyder*, 592 S.W.3d 375, 381 (Mo. App. S.D. 2019)).  But the record before us does not clearly indicate the failure to request a self-defense instruction was trial strategy.

to avoid or avert it, and the necessity to use deadly force as a last resort must be present.'" *State v. Hill*, 697 S.W.3d 885, 890 (Mo. App. E.D. 2024) (quoting *State v. Sinks*, 652 S.W.3d 322, 352-53 (Mo. App. E.D. 2022)).

Viewed in the light most favorable to Burkett, there was substantial evidence to put the issue of self-defense before the jury. Burkett testified he pulled his gun out after Victim aimed a shotgun at him. Burkett denied being the initial aggressor and claimed he was scared and acting in self-defense. This evidence was sufficient to inject the issue of self-defense into the case. Failure to give a mandatory instruction is grounds for reversal on plain error review. *Jones*, 686 S.W.3d at 307. Accordingly, the trial court's failure to instruct the jury constituted plain error and we must determine if the failure to instruct the jury in this case resulted in manifest injustice.

While the jury heard evidence that Burkett may have acted in self-defense, it was not given any means by which to apply that evidence to the verdict. The failure to provide the jury with complete instructions deprives us of the ability to determine whether the jury found Burkett guilty on a correct and lawful basis. Because the jury was not instructed on the issue of whether Burkett acted in self-defense, they were unable to consider all legal theories supported by the evidence. "By omitting a defense instruction supported by the evidence, 'the trial court completely relieve[s] the State of its burden to prove beyond a reasonable doubt that [the defendant] was not justified in using force[.]'" *Id.* at 308 (quoting *State v. Seay*, 256 S.W.3d 197, 201-02 (Mo. App. E.D. 2008)). "Manifest injustice results when a defendant meets his burden of injecting the issue of self-defense into the case but the trial court does not submit an instruction on the issue to the jury regardless of whether the defendant requests the instruction." *Id.* at 307-08

7

(quoting **State v. Morrow**, 41 S.W.3d 56, 59 (Mo. App. W.D. 2001)).  Burkett has met his high burden of demonstrating reversible plain error.[4]  Point 1 is granted.

**Conclusion**

Burkett's convictions are vacated, and the cause is remanded to the trial court for a new trial.

MARY W. SHEFFIELD, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, C.J. – CONCURS

JEFFREY W. BATES, J. – CONCURS

---

[4] We acknowledge there was significant evidence of Burkett's guilt in this case.  Three witnesses testified Burkett pulled a gun out first, pointed it at Victim's head, pulled the trigger, and that Victim never had a gun.  Burkett also fled the scene, got rid of the gun, and gave inconsistent statements to law enforcement.  Only Burkett claimed Victim had a gun and aimed it at Burkett before Burkett drew his gun.  The State's evidence, from our vantage point, appears stronger than Burkett's.  But "[w]hen a jury is not properly instructed, appellate courts are left to conjecture about whether the defendant was found guilty on a correct and lawful basis."  **Jones**, 686 S.W.3d at 308.